REVISED JUNE 12, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 28, 2008

Charles R. Fulbruge III
Clerk

No. 07-60667

MISSISSIPPI STATE DEMOCRATIC PARTY; MISSISSIPPI STATE
DEMOCRATIC PARTY EXECUTIVE COMMITTEE

Plaintiffs-Appellants-
Cross-Appellees-Appellees,

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED
PEOPLE

Intervenor-Appellant

v.

GOVERNOR HALEY BARBOUR; SECRETARY OF STATE C. DELBERT
HOSEMANN, JR., in their official capacities as members of Mississippi State
Board of Election Commissioners

Defendants-Appellees,

ATTORNEY GENERAL JIM HOOD

Defendant-Appellee-
Cross-Appellant,

MISSISSIPPI REPUBLICAN EXECUTIVE COMMITTEE

Intervenor Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Mississippi

No. 07-60667

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

EDITH H. JONES:

Plaintiffs Mississippi Democratic Party and Mississippi Democratic Executive Committee filed a declaratory judgment action seeking to overturn as unconstitutional Mississippi's semi-closed primary[1] statute, Miss. Code Ann. § 23-15-575. They succeeded beyond their expectations when the district court declared the statute unconstitutional and fashioned a sweeping injunction that required not only party registration but also photo identification in order to vote in a party's primary. The court's ruling spawned a free-for-all on appeal. Plaintiffs themselves cross-appeal the mandatory photo ID requirement. Intervenors NAACP and the Mississippi Republican Executive Committee also challenge separate portions of the decree. The state is divided: defendant Mississippi Attorney General Jim Hood argues that plaintiffs' claims are not justiciable, while governor Haley Barbour and the Secretary of State have filed a brief supporting photo IDs for voters. In the meantime, the state legislature has been debating changes in the primary law. We will put the parties out of their litigation misery.

Because plaintiffs failed to demonstrate that their claims involve an actual case or controversy, the claims were not justiciable and should not have been addressed by the district court. The judgment is REVERSED and the injunction VACATED.

---

[1] The Supreme Court has concluded that Mississippi has a "semi-closed" primary that allows voters to affiliate with the party at the time of the primary, rather than an "open" primary where any voter can vote for any candidate, or a closed primary where the voter must be registered as a member of the party for some period of time prior to the primary election. See Tashjian v. Republican Party of Conn., 479 U.S. 208, 222 n.11, 107 S.Ct. 544, 553 (1986).

2

BACKGROUND

Mississippi's partisan primaries are administered by the political parties consistent with state and federal law. MISS. CODE ANN. § 23-15-263. Mississippi's primary election statute, Miss. Code Ann. § 23-15-575, states that "no person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates."

In June 2003, the Mississippi State Democratic Party and Mississippi State Democratic Party Executive Committee (collectively "MSDP") asked the state attorney general ("AG") how the party could enforce § 23-15-575, which it had not done before. The MSDP wanted to curtail alleged "party raiding" and crossover voting "whereby voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary."[2] This practice is forbidden by the plain language of § 23-15-575. The AG responded with an opinion ("Cole Opinion") stating that a party may challenge a voter in a primary only in accordance with Miss. Code Ann. § 23-15-579, which outlines strict procedures for challenging a voter. The AG stated further that a voter may be challenged only for the reasons listed in

---

[2] Rosario v. Rockefeller, 410 U.S. 752, 760, 93 S.Ct. 1245, 1251 (1973).

Miss. Code Ann. § 23-15-571.[3]  See 2003 WL 21962318 (Miss. A.G. Op. No. 2003-0316 July 21, 2003).  According to the AG:

> [W]e find nothing that would allow a poll worker, poll watcher or another voter to ask a voter if he or she intends to support the nominees of the party once the voter presents himself or herself to vote.  Challenges may be made . . . for the reason that the voter does not intend to support the nominees of the party per Section 23-15-575 . . .
>
> If a challenge of a voter is properly initiated in strict accordance with Section 23-15-579 and the voter then openly declares that he or she does not intend to support the nominees of the party, the poll workers could find the challenge to be well taken and mark the ballot "challenged" or "rejected" consistent with the provisions of said statute. On the other hand, if the voter openly declares his or her intent to support the nominees, then a challenge is not proper under Section 23-15-575.
> . . . .
> [W]e have previously opined that absent an obvious factual situation such as an independent candidate attempting to vote in a party's primary, the stated intent of the voter is controlling. . . . No past action by a voter can form the basis of a valid challenge under Section 23-15-571(3)(g) and Section 23-15-575.

Id.

---

[3] Section 23-15-571 states that "[a] person offering to vote may be challenged upon the following grounds":
   (a) That he is not a registered voter in the precinct;
   (b) That he is not the registered voter under whose name he has applied to vote;
   (c) That he has already voted in the election;
   (d) That he is not a resident in the precinct where he is registered;
   (e) That he has illegally registered to vote;
   (f) That he has removed his ballot from the polling place; or
   (g) That he is otherwise disqualified by law.

Because Mississippi is a covered jurisdiction under the Voting Rights Act, 42 U.S.C. § 1973b(b), and the MSDP had never before implemented § 23-15-575, the Cole Opinion also advised the MSDP to seek preclearance from the United States Department of Justice ("DOJ") before changing its practices. Under the Voting Rights Act, any proposed change in "qualification, prerequisite, standard, practice, or procedure" for voting in a covered jurisdiction must be precleared by the U.S. Attorney General or by the United States District Court for the District of Columbia. Lopez v. Monterey County, 525 U.S. 266, 270–71, 119 S.Ct. 693, 697 (1999).[4] In August 2003, the MSDP sought preclearance to implement the semi-closed primary system that § 23-15-575 allowed. The MSDP did not seek preclearance to implement a closed primary system in which the voters must be registered Democrats. Due to the vagueness of the party's submission, the DOJ could not understand what changes MSDP sought to effect, and it found the party's filing incomplete and not "ripe for review," and warned that any changes to voting procedures that the MSDP may have adopted were legally unenforceable without preclearance.

The MSDP turned next to federal court, filing a complaint against members of the Mississippi State Board of Election Commissioners[5] on the basis that § 23-15-575 unconstitutionally infringes its First Amendment right of

---

[4] We assume, although the issue has not been raised here, that the conduct of party primary elections under the auspices of the State is subject to preclearance under the Voting Rights Act. See generally Morse v. Republican Party of Va., 517 U.S. 186, 204–05, 116 S.Ct. 1186, 1198 (1996) (summarizing cases).

[5] In particular, the complaint named as defendants Governor Haley Barbour, Attorney General Jim Hood, and Secretary of State Eric Clark, in their official capacities as members of the Mississippi State Board of Election Commissioners. The defendants will be referred to hereinafter as the "state defendants."

association.[6]  The party asserts a First Amendment right to exclude non-Democrats from participating in Democratic primaries.  Most pertinent are its requests for a judgment declaring Miss. Code Ann. § 23-15-575 unconstitutional and the AG's Cole Opinion inconsistent with the Supreme Court's decision in California Democratic Party v. Jones.[7]

The MSDP also sought an injunction permanently restraining the state defendants from: (1) conducting any partisan primary without affording the MSDP reasonable opportunity in advance of that primary to exercise its rights to define participation in that primary; (2) conducting any partisan primary without (a) implementing a reasonable mechanism for that primary to effectuate the MSDP's exercise of its right to limit participation in that primary, and (b) providing a means for the MSDP to verify who participated in its primary and communicate with its supporters and members who identified themselves by participating in the primary; and (3) encouraging or facilitating, directly or indirectly, party raiding by Republican and independent voters in connection with any partisan primary except to the extent expressly authorized by the MSDP for that primary.

The district court denied MSDP's motion for a preliminary injunction against holding the June 2006 Democratic congressional primary pursuant to

---

[6] The lawsuit was originally brought as a class action on behalf of all members of the Mississippi Democratic Party.  But because there was never a motion for class certification during the first sixteen months after the complaint was filed, the district court ruled that any future motion to certify the class was time-barred.  Thus we need not resolve whether the MSDP could sue on behalf of Democratic voters or noncandidate party members.  See Tex. Democratic Party v. Benkiser, 459 F.3d 582, 587 n.5 (5th Cir. 2006).

[7] The Jones decision held that California's "blanket primary," in which voters could vote for any candidate regardless of voter's or candidate's party affiliation, violated political parties' First Amendment right of association.  Jones, 530 U.S. 567, 586, 120 S.Ct. 2402, 2414 (2000)

§ 23-15-575 and existing state election law. Following discovery, both parties moved for summary judgment. The state defendants argued that the MSDP's claims should be dismissed because: (1) the parties, and not the state defendants, administer Mississippi's partisan primaries; (2) § 23-15-575 permits the MSDP to operate a semi-closed primary; (3) the MSDP had yet to implement § 23-15-575; (4) the MSDP had no intention to operate a "closed primary" and was seeking an impermissible advisory opinion; (5) the MSDP's claims were not justiciable because the MSDP had no injury in fact and its claims were not ripe for judicial intervention; (6) the Jones decision did not address nor prohibit the primary system used by Mississippi and other states; and (7) § 23-15-575 is a reasonable, nondiscriminatory regulation.

In its cross-motion, the MSDP disclaimed authority to hold a closed primary under § 23-15-275 because there is no party registration in Mississippi and no way to verify whether a prospective primary voter "intends" to support the same party in the primary and the general election. The MSDP further argued that its claims were ripe for judicial review because it has no means to enforce § 23-15-275, and the issue of the statute's constitutionality affects past and future primaries.

The district court ruled for MSDP, declaring:

[T]he current primary system in Mississippi pursuant to MISS. CODE ANN. 23-15-575 unconstitutionally infringes on the Mississippi Democratic Party's First Amendment right of association because (a) there is no mandatory party registration with the option for voters to choose to register as unaffiliated, and (b) there is no mandatory voter photo identification in place to verify who participates in a primary.

7

The court ordered the Mississippi Legislature to "pass a new primary system that does not run afoul of this court's rulings by no later than April 1, 2008." The court directed the Mississippi Legislature to apply for preclearance from the DOJ under the Voting Rights Act before implementing any new primary system. The court also barred the state from utilizing its current primary election system after August 31, 2007.

After the district court issued these orders, the MSDP moved unsuccessfully to eliminate the ruling requiring photo IDs of voters. The court granted the AG's motion to extend until August 31, 2008 the deadline after which no primaries may be held under § 23-15-575. The Mississippi Republican Executive Committee ("GOP") intervened, but the court refused its request to exempt the GOP from the ruling. The Mississippi State Conference of the NAACP also intervened but failed to persuade the court to reverse its requirement that Mississippi re-register voters and require mandatory voter identification. All parties appealed.

## DISCUSSION

The critical facts here are that (a) the MSDP has taken no steps internally to limit participation in its primaries to members of the Democratic Party, and (b) because of its default, MSDP cannot allege that the Mississippi statute actually has the unconstitutional effect claimed by the party. Mississippi's AG forcefully contends that MSDP has thus failed to bring a case or controversy cognizable by federal courts.

Federal courts cannot consider the merits of a case unless it "presents an 'actual controversy,' as required by Art. III of the Constitution and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." Steffel v. Thompson, 415 U.S. 452, 458, 94 S.Ct. 1209, 1215 (1974). The many doctrines that have fleshed out the

"case or controversy" requirement — standing, mootness, ripeness, political question, and the like — are "founded in concern about the proper — and properly limited — role of the courts in a democratic society." Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324 (1984) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975)). These "doctrines state fundamental limits on federal judicial power in our system of government." Id. This court reviews justiciability issues de novo. Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 659 (5th Cir. 2006).

"Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." Renee v. Geary, 501 U.S. 312, 320, 111 S.Ct. 2331, 2338 (1991); see also LeClerc v. Webb, 419 F.3d 405, 413 (5th Cir. 2005). The "essence" of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth, 422 U.S. at 498, 95 S.Ct. at 2205. In order to have standing, "a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." Houston Chronicle Publ'g Co. v. City of League City, Tex., 488 F.3d 613, 617 (5th Cir. 2007) (citation omitted). An injury in fact is an invasion of a legally protected interest which is "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992).

The standing question "bears close affinity to questions of ripeness — whether the harm asserted has matured sufficiently to warrant judicial intervention." Warth, 422 U.S. at 499 n.10, 95 S.Ct. at 2205. "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."

Monk v. Huston, 340 F.3d 279, 282 (5th Cir.2003) (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 833 F.2d 583, 586 (5th Cir.1987)). Ripeness often overlaps with standing, "most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical." Brooklyn Legal Servs. Corp. v. Legal Servs. Corp., 462 F.3d 219, 225 (2nd Cir. 2006).

In this case, the standing and ripeness issues both turn on whether the MSDP's alleged injury is actual or imminent rather than conjectural or hypothetical. MSDP, as plaintiff, bears the burden of establishing standing and ripeness. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 608 (1990). The party unquestionably pleaded a constitutional injury by alleging that Mississippi's semi-closed primary statute requires it to associate with members of the other party during its candidate-selection process. See Jones, 530 U.S. at 577–82, 120 S.Ct. 2409–412; Miller v. Brown, 462 F.3d 312 (4th Cir. 2006). To prove standing to raise a First Amendment facial challenge, however, a plaintiff must produce evidence of "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute." Speaks v. Kruse, 445 F.3d 396, 399 (5th Cir. 2006) (citing Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309 (1979)).[8]

MSDP attempts to demonstrate actual or threatened injury in three ways: (a) by declaring its intention, were § 23-15-575 not in place, to hold closed

---

[8] Specifically, plaintiffs must demonstrate a "serious[] interest[]" in acting contrary to a statute. Int'l Soc'y for Krishna Consciousness v. Eaves, 601 F.2d 809, 818 (5th Cir. 1979); see also St. Paul Area Chamber of Commerce v. Gaertner, 439 F.3d 481, 487–88 (8th Cir. 2006) (requiring "a specific intent to pursue conduct in violation of the challenged statute"); Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (requiring evidence of "concrete plans" to violate statute). We presume a lack of jurisdiction unless the contrary appears from the record. Renne, 501 U.S. at 316, 111 S.Ct. at 2336.

primaries; (b) by asserting a threat of prosecution against it for violating Mississippi election law; and (c) by protesting its inability to modify its party rules without legislative sanction. On analysis, none of these points satisfies the party's burden.

In regard to the party's intention to effectuate a closed primary, standing is not created by a declaration in court pleadings. Instead MSDP must show that it intends to hold closed primaries in violation of Mississippi's semi-closed primary statute. Speaks, 445 F.3d at 399. The record is bereft of evidence of such firm intention. The MSDP has taken no steps to authorize the party to conduct closed primaries, as by placing the policy up for a party-wide vote, nor has it adopted any policies to exclude voters not registered as Democrats from its primary. MSDP has provided no affidavit evidence that it intends to do so. In fact, MSDP's liberal membership policy eschews any requirement of membership cards. Significantly, the MSDP never pursued to completion its attempt to preclear with the DOJ any proposed change to a closed primary.[9]

Without concrete plans or any objective evidence to demonstrate a "serious interest" in a closed primary, MSDP suffered no threat of imminent injury. Lujan, 504 U.S. at 560, 112 S.Ct. at 2136. Recent Supreme Court decisions addressing First Amendment challenges to primary election statutes support our conclusion. In those cases, unlike this one, the political parties formally approved policies contrary to the challenged statute,

---

[9] Again, the MSDP's August 2003 letter to the DOJ only requested preclearance to implement the semi-closed primary system authorized by the Cole Opinion. Moreover, the record appears to indicate that the MSDP abandoned even this modification to its primary procedures after the DOJ denied its request for administrative reasons. Thus, the record indicates the MSDP has not attempted to preclear any policy for implementing a closed primary in Mississippi.

11

demonstrating evidence of an intent to violate the statute. See, e.g., Jones, 530 U.S. at 571, 120 S.Ct. at 2406 (political party adopted rules prohibiting nonmembers from voting in their primaries and challenged open primary statute); Clingman v. Beaver, 544 U.S. 581, 585, 125 S.Ct. 2029, 2034 (2000) (party notified state officials of intent to hold open primary and challenged closed primary statute); Tashjian, 479 U.S. at 210, 107 S.Ct. at 546 (GOP adopted rule allowing independents to vote and challenged closed primary statute). Although the MSDP contends its executive committee's decision to authorize a suit is sufficient to give it standing to challenge the statute, "[t]he requirements of Article III are not satisfied merely because a party requests a court of the United States to declare its legal rights." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 471, 102 S.Ct. 752, 758 (1982).

MSDP primarily relies on the Fourth Circuit's opinion in Miller to support its argument that it has standing. In that case, a local GOP organization sought a declaration that Virginia's open primary law violated its First Amendment right of association. Miller, 462 F.3d at 316. The GOP amended its "Plan of Organization" to exclude voters who participated in the nomination process of another party within the preceding five years before the primary. Id. at 314. The Fourth Circuit, reversing the district court, held that the GOP had standing because Democratic "party raiding" was inevitable and the GOP had to know what process would govern candidate selection.

MSDP contends that, like the GOP in Miller, it has standing to challenge a statute that produces imminent harm by altering the nature of its candidate selection process. See Clingman, 544 U.S. at 600, 125 S.Ct. at 2043 (O'Connor,

J., concurring) ("[T]he choice of who will participate in selecting a party's candidate obviously plays a critical role in determining both the party's message and its prospects of success in the electoral contest."). But Miller is distinguishable because while the GOP had made and attempted to implement plans to hold closed primaries, the MSDP has done neither.

MSDP's situation more closely resembles that of the Democratic Party in Renne v. Geary. The party challenged a California statute that prohibited political parties from endorsing candidates for nonpartisan offices. The party alleged that it desired to endorse candidates for nonpartisan offices, but had refrained from doing so for fear of the consequences. Renne, 501 U.S. at 321, 111 S.Ct. at 2338. The Supreme Court held that there was no live controversy because the party had not shown that it wished to endorse any particular candidate in the past, and thus there was no injury. Id.; 111 S.Ct. at 2339. Likewise, the case was not ripe because the party had not shown an intent to endorse candidates in the future. Id. As in Renne, the MSDP has not shown a specific intent to hold closed primaries.[10]

The MSDP next argues that it has standing to challenge § 23-15-575 because the AG's Cole Opinion warns that a party could face legal action if it wrongfully excludes a voter from its primary. Although a plaintiff need not expose himself to actual arrest or prosecution in order to challenge a statute for infringing constitutional rights, the plaintiff must be seriously interested in disobeying the statute. Houston Chronicle Publ'g Co., 488 F.3d at 619. Because

---

[10] The MSDP argues that Renne is distinguishable because the Court also found no credible evidence the California statute was or would be enforced. This conclusion, however, supported its actual holding that the case was not ripe because there was no evidence that the party intended to endorse candidates.

the MSDP has neither requested preclearance from the DOJ for a closed primary nor formally adopted such a policy, it has not demonstrated a "serious interest" in acting contrary to § 23-15-575, nor, for that reason, is there any basis for an inference that MSDP faced any credible threat of prosecution over its holding of party primaries.

The MSDP finally falls back on a futility argument: because it cannot change to a closed primary without legislative action, it would be "futile" to propound such a policy, and "strict adherence to the standing doctrine may be excused." LeClerc, 419 F.3d at 414. Political parties acting with conviction on behalf of policy positions they deemed constitutional did not resort to a futility doctrine in the Supreme Court cases cited previously. But aside from those cases, MSDP has not even attempted — as it could have legally done — to enforce a semi-closed primary under § 23-15-575. The futility argument rings hollow when MSDP has not taken even feeble steps to protect itself from party raiding.

Even if the MSDP had enacted party policies in favor of a closed primary system, and thereby proved its standing to sue, a serious question of ripeness would remain. The party asserts that because it is required unconstitutionally to associate with non-Democrats who vote in its primary, its purely legal challenge to § 23-15-575 is nether premature nor hypothetical. A pre-enforcement challenge to the law is generally ripe "if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." Monk, 340 F.3d at 282. The difficulty with this argument is the assumption that only legal issues remain in dispute between the parties. Mississippi's AG notes that MSDP has never attempted to challenge voters pursuant to the process outlined in the Cole Opinion. Exercising its rights by

14

means of that process could have yielded data proving or disproving (a) the existence of party raiding; (b) the practicability of the process; and (c) whether the party's associational rights were actually infringed by a semi-closed primary. It is certainly conceivable, for instance, that the party's mere public announcement of its intent to challenge suspected non-Democratic voters would discourage raiding attempts. Further, the party admitted in discovery that it was unaware of any primary voters who did not support Democratic Party principles or intend to support the party's nominees. In sum, while it might be true that § 23-15-575 permits party raiding, the existence and extent of such raiding are factual questions that cannot be assessed until MSDP has made some effort to enforce the existing law. Only after § 23-15-575 has been enforced can the novel legal issue of its effect on the MSDP's associational rights be compared with the blanket primary at issue in Jones.

Further factual development, as well as an actual policy contrary to the statute, would enhance this case's fitness for judicial review. See Texas v. United States, 523 U.S. 296, 301, 118 S.Ct. 1257, 1260 (1998) ("The operation of the statute is better grasped when viewed in light of a particular application."). Likewise, "postponing consideration of the questions presented, until a more concrete controversy arises, also has the advantage of permitting the state courts with further opportunity to construe the statute." Id. (citation omitted).

It is ironic that the MSDP now appeals the sweeping remedy imposed by the district court, even after the court followed the party's wishes and struck down § 23-15-575. Considering this fact, and looking at the number of interventions, appeals, and cross-appeals the district court's order spawned, it is apparent to us that the lack of an "actual controversy" rendered the case "too

remote and abstract an inquiry for the proper exercise of the judicial function." Id. (quoting Longshoreman v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 448 (1954)). The open-ended nature of the dispute, in turn, led the court to propose a quintessentially political remedy. When MSDP actually decides to adopt a closed primary, and when the implementation of § 23-15-575 has a demonstrated impact on the conduct of primary elections, a justiciable case or controversy will exist.

## CONCLUSION

For these reasons, the judgment of the district court is REVERSED and the injunction VACATED.