# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 23, 2014

Lyle W. Cayce
Clerk

No. 13-10705

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH
AND WELFARE FUND, an Employee Welfare Benefit Plan, by Arthur H.
Bunte, Jr., a Trustee thereof, in his representative capacity,

Plaintiff – Appellant,

v.

HEALTH SPECIAL RISK, INCORPORATED; MARKEL INSURANCE
COMPANY; FEDERAL INSURANCE COMPANY; ACE AMERICAN
INSURANCE COMPANY,

Defendants – Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, CLEMENT, and OWEN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this insurance coverage dispute, Plaintiff—a large ERISA provider—seeks a declaration that Defendants—three independent, non-ERISA insurance providers—are bound by the terms of the ERISA plan and primarily liable for injuries sustained by individuals covered by the parties. The district court granted Defendants' motion to dismiss for failing to seek equitable relief under ERISA § 502(a)(3). We affirm.

## FACTS AND PROCEEDINGS

Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States") is a large ERISA Plan, providing health and

welfare benefits to members of the Teamsters Union and their families. Eleven individuals insured by Central States (the "insureds") were injured while participating in various activities. In addition to having insurance from Central States, all eleven members were also covered by insurance policies from either Markel Insurance Company, Federal Insurance Company, or Ace American Insurance Company—none of which are an ERISA plan. Defendant Health Special Risk, Inc. ("HRS") is the third-party administrator for each of the independent insurance companies (collectively with HRS, "Defendants") and is responsible for administering the claims under their various policies.

The underlying dispute is whether Central States or the Insurer Defendants are primarily responsible for the medical bills that resulted from their insureds' injuries. At the time of their injury, the insureds were covered both as dependents of Central States plan members and by Defendants. Central States paid the claims directly to the medical care providers and sought reimbursement from the Defendants, who refused payment on the grounds that their policies only provided "excess accidental injury coverage," making them only secondarily liable once the injureds' primary coverage was exhausted. Central States claims that the Insurer Defendants provide overlapping coverage, and are therefore the primary providers under their coordination of benefits ("COB") provision of its ERISA Plan.

## A.    First Complaint

Central States' original complaint sought (1) declaratory judgment that the Defendants were liable to reimburse Central States for the medical expenses they had paid to their injured members, (2) restitution under ERISA[1] for those same expenses, and (3) an equitable lien / constructive trust under

---

[1] The original complaint does not specify precisely which section of ERISA Count II was based upon, but it is seems clear that all ERISA claims are based on § 502(a)(3).

ERISA § 502(a)(3) against the Defendants' funds to recoup those expenses. Defendants moved to dismiss Central States' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on the grounds that Central States failed to allege equitable relief as required by ERISA § 502(a)(3). Section 502(a)(3) provides:

> (a)    Persons empowered to bring a civil action
>
> A civil action may be brought . . .
>
> (3) by a participant, beneficiary, or fiduciary
>
> > (A)    to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> >
> > (B)    to obtain other appropriate equitable relief
> >
> > > (i)    to redress such violations or
> > >
> > > (ii)    to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132.

The district court granted Defendants' motion, but allowed Central States to amend their complaint.

## B.    Amended Complaint

Central States' amended complaint contained the original three counts—with minor alterations—plus three additional counts: (1) declaratory judgment to declare liability and enjoin Defendants from violating the provisions of the COB; (2) subrogation rights against Insurer Defendants to allow Central States to sue in their stead; and (3) unjust enrichment under federal common law. All six counts—while phrased in terms of equitable relief—requested monetary payment from the Defendants. Upon another 12(b)(6) motion by Insurer Defendants, the district court dismissed five of Central States' claims for failing to seek equitable relief under ERISA § 502(a)(3). Central States' remaining state law subrogation claim initially survived, but was dismissed

No. 13-10705

following Defendants' motion for reconsideration on the grounds that it was conflict preempted by ERISA § 514(a)'s civil enforcement scheme.[2]

## C.    Appeal

Central States essentially raises three issues on appeal.  First, Central States asks this court to find that § 502(a)(3) allows the type of equitable relief requested in the amended complaint.  Second, Central States requests that this court recognize a federal common law cause of action for unjust enrichment to fill the gap in ERISA's statutory scheme.  Finally, Central States argues that it successfully stated a claim for declaratory judgment—without a request for money—under § 502 and is entitled to a determination of liability.  Because these claims all lack merit, we affirm.

## STANDARD OF REVIEW

Dismissal for failure to state a claim is reviewed de novo, applying the standard used to review a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Hart v. Hairston*, 343 F.3d 762, 763–64 (5th Cir. 2003).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and footnote omitted).

---

[2] Central States does not appeal the district court's determination that its state law subrogation claims are preempted by ERISA.

4

No. 13-10705

**DISCUSSION**

I.    **Central States failed to state a claim for equitable relief as required by ERISA § 502(a)(3).**

Central States seeks to bind Defendants—with whom it has no contractual or business relationship—to its ERISA Plan's COB provisions, which provide that Defendants are primarily responsible for paying the insureds' medical bills. As quoted *supra*, the statutory authority for this civil action is found in ERISA § 502(a)(3), which provides that:

A civil action may be brought . . .

(3) by a participant, beneficiary, or fiduciary

   (A)   to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

   (B)    to obtain other appropriate equitable relief

   (i)    to redress such violations or

   (ii)   to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C § 1132.

As the Plan fiduciary, Central States is entitled to bring an action to "enforce . . . the terms of the plan." *Id.* However, the text of ERISA makes it clear that the relief sought must be "appropriate equitable relief," not legal relief. Ever since its decision in *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993), the Supreme Court has repeatedly defined "appropriate equitable relief" as "those categories of relief that were *typically* available in equity." *Id.* at 255, 256; *see also Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006). Equitable relief is contrasted with "legal relief," which constitutes claims seeking "nothing other than compensatory damages." *Mertens*, 508 U.S. at 255. The classic form of purely legal relief is money damages. *Id.*

To comply with the requirements of § 502(a)(3), the six counts of Central States' amended complaint are framed as equitable relief. Despite this, each count actually requests monetary damages:

5

**Count 1, Declaratory Judgment (Unpaid and Future Expenses):** requesting this court "declare the liability of the Defendants to pay, unpaid and future medical expenses" and "declare that the COB provisions of Central States Plan may and should be enforced against the Defendants, by requiring the Defendants pay any unpaid present and future covered medical expenses";

**Count 2, Declaratory Judgment:** requesting an "injunction requiring the Defendants to pay covered medical expenses";

**Count 3, Restitution of Payments Made:** requesting "an order of equitable relief requiring them to make restitution to Central States";

**Count 4, Equitable Lien / Constructive Trust:** requesting "[g]rant equitable relief . . . in the form of an equitable lien and imposition of a constructive trust . . . [and] to enforce Central States' equitable liens in the identifiable" amounts claimed owed by each Insurer Defendant;

**Count 5, Subrogation:** requesting "an order of equitable relief, in the form of money compensation";

**Count 6, Unjust Enrichment, Federal Common Law:** requesting "[g]rant of money judgment."

Simply framing a claim as equitable relief is insufficient to escape a determination that the relief sought is legal. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-11 (2002) ("an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity."); *Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 n.7 (5th Cir. 2007) ("attempts to recharacterize a desired § 502(a)(3) remedy as a purely equitable form of relief, like an injunction, have been consistently rejected"), *overruled on other grounds by Gearlds v. Entergy Services, Inc.*, 709 F.3d 448, 452 (5th Cir. 2013). But while "[a]lmost invariably . . . suits seeking (whether by judgment,

injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty," *Knudson*, 534 U.S. at 210, there are some instances in which equitable relief *can* result in monetary compensation for a plaintiff. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) ("But the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief."). Consequently, Central States' claims for monetary relief will be considered equitable only if they fit into one of the few categories of "typical equitable relief" that allow for money damages.

## A.    Case Law on Monetary Damages as Equitable Relief.

We begin our analysis with a review of the Supreme Court's jurisprudence on equitable monetary relief. Following the Supreme Court's determination in *Mertens* that § 502(a)(3) provided only the types of equitable relief typically available in courts of equity, the Court was confronted with the question of whether claims for injunctive relief or restitution—which sought monetary compensation—were the types of relief typically available in equity. In *Great-West*, an ERISA-plan fiduciary sued the plan beneficiary to recover funds the beneficiary had won in a state court tort action and placed in a Special Needs Trust. The fiduciary was entitled to these funds under a provision of the plan granting it "'the right to recover from the [beneficiary] any payment for benefits' paid by the Plan that the beneficiary is entitled to recover from a third party." 534 U.S. at 207. The suit was brought under § 502(a)(3), requesting the funds under theories of injunctive relief and restitution.

Plaintiff's "injunctive relief" argument—framed as defendant's "failure to reimburse the plan"—was perfunctorily dismissed by the Court, which held that "an injunction to compel the payment of money past due under a contract,

or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 210-11. The restitution argument merited more attention. Although restitution was typically available in equity, "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. Rather, there were two types of restitution: legal restitution and equitable restitution. *Id.* Whether restitution is legal or equitable depends on (1) "the basis for the plaintiff's claim" and (2) "the nature of the underlying remedies sought." *Id.* at 213.

As the names suggest, only equitable restitution is available as "appropriate equitable relief" under § 502. Typically, equitable restitution was sought in the form of a constructive trust or equitable lien, where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* Although the *Great-West* Court found that the funds sought were "particular"—funds from a tort judgment held in a trust—they were not in defendant's possession because he did not control the trust. Consequently, "the basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred." *Id.* at 214. The nature of the restitution sought, then, was "not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents." *Id.* Because § 502(a)(3) does not allow claims for legal relief, the suit was dismissed for failure to state a claim.

The Supreme Court refined this rule in *Sereboff.* 547 U.S. 356. As in *Great-West*, the fiduciary sought reimbursement of settlement funds received by the beneficiary from a third party. But unlike *Great-West*—where the funds were controlled by a non-defendant trust fund—the funds in *Sereboff* were

placed in an investment trust controlled by the defendant-beneficiary. The Court reviewed the requirements under § 502(a)(3), reiterating that equitable restitution "sought to impose a constructive trust or equitable lien on particular funds or property in the defendant's possession." *Id.* at 362 (internal quotation marks omitted). Because the funds were controlled by defendant, the "possession" requirement was satisfied and *Great-West* did not automatically preclude recovery. *Id.* at 362-63.

Although the Court determined that the "nature of the remedy sought" was equitable—the funds were controlled by the defendant and could be recovered from a particular fund—plaintiff still had to establish that the "basis of its claim" was equitable as well. *Id.* at 363. Analogizing to the "familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing," *id.* at 363 (citing *Barnes v. Alexander*, 232 U.S. 117 (1914) (Holmes, J.) (internal alterations omitted)), the Court found the beneficiary's promise under his ERISA plan to reimburse the fiduciary "impose[d] on that portion [of the settlement fund] a constructive trust or equitable lien," allowing them to follow a portion of the recovery into the beneficiary's hands. *Id.* at 364. Because the ERISA plan imposed the modern equivalent of a constructive trust or equitable lien on the funds, the claimed basis was equitable. *Id.* As both the basis of the claim and nature of the remedy were equitable, the Court allowed the fiduciary to recover monetary relief through equitable restitution. *Id.* at 369.

In *CIGNA*, 131 S. Ct. 1866, the Court considered whether monetary damages were typically available in equity for breach of fiduciary duty. Finding that "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty," the Court allowed the plan beneficiary to recover monetary damages against the plan fiduciary. *Id.* at 1880. In so holding, the Court emphasized (1) that a

plan fiduciary is typically treated as a trustee under ERISA, *id.* at 1879, (2) that historically "this kind of monetary remedy against a trustee . . . was 'exclusively equitable,'" *id.* at 1880, and (3) the fact that "the defendant in this case, unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference," *id.*  Because of these specific intricacies of trust law, the monetary relief awarded fell within the scope of "appropriate equitable relief" under § 502(a)(3).  *Id.*

The final major case on-point is *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013).  Like *Great-West* and *Sereboff*, *McCutchen* involved an action by a fiduciary for reimbursement under the terms of the ERISA plan, which required "full reimbursement" for medical expenses paid out of any funds received by the beneficiary.  McCutchen countered with two equitable defenses: (1) US Airways could not recover from his funds unless he over-recovered; and (2) US Airways was required to contribute its fair share to the funds expended to attain his recovery.  The Supreme Court rejected McCutchen's defenses.  Relying on the logic of *Sereboff*, the Court ruled that the ERISA plan promised "full reimbursement," and therefore created "the modern-day equivalent of an equitable lien by agreement."  *Id.* at 1546 (internal quotation marks omitted).  Because enforcing the plan "means holding the parties to their mutual promises," allowing equitable defenses to trump its terms would be "at odds with the parties' expressed commitments." *Id.*

There are several takeaways from these cases.  First, ERISA § 502(a)(3) only allows claims for the types of equitable relief typically available in equity. Money damages are not typically available in equity.  *See Mertens*, 508 U.S. at 255 n.5 ("The dissent expresses its certitude that 'the statute clearly does not bar such a suit.'  That, of course, is not the issue.  The issue is whether the statute affirmatively *authorizes* such a suit.") (internal citations omitted).

Second, for money damages to be available under a theory of restitution, both the basis of the claim and the nature of the relief must be equitable. Third, money damages are available against a fiduciary for breach of duty. And finally, general principles of equity will not defeat the terms of a plan because principles of contract bind the parties to their mutual promises.

**B.    Central States' Claims Request Relief Not Typically Available in Equity.**

Because Central States requests money damages, it must demonstrate that its claims fall within "those categories of relief that were *typically* available in equity." *Mertens*, 508 U.S. at 256. In its attempt to carry this burden, Central States offers three arguments: (1) under Supreme Court and Fifth Circuit precedent, Defendants' "have become constructive trustees" or "fiduciaries" of Central States' assets; (2) it should be allowed to exercise its subrogation rights under the plan; and (3) other circuits have found an ERISA plan's COB provisions enforceable against private insurers. Defendants argue that all six counts should be dismissed for requesting impermissible legal relief. We agree with Defendants.

**1.    Central States' Requested Remedies are Not "Appropriate Equitable Relief."**

Central States argues that the trend in Supreme Court precedent following *Great-West* counsels in favor of allowing equitable recovery of monetary damages against another insurer. The argument proceeds as follows: (1) the Court's purportedly renewed focus on the terms of the plan— particularly its rulings in *Sereboff* and *McCutchen*—make the terms of the plan the equivalent of a constructive trust or equitable lien, creating a duty on behalf of Defendants; and (2) because of the duty owed, Defendants are trustees and fiduciaries of the Plan. This relationship creates the basis for equitable relief. The nature of the remedy sought—under Central States' argument—is established by the Court's movement away from the traditional

tracing requirement for restitution.    Having eliminated that requirement, Central States argues that the nature of the relief is equitable because it can identify the precise amount owed from Defendants by proving the amount it expended to satisfy the insureds' claims.   Because Defendants owe this money to Central States under the Plan—to which Defendants are purportedly bound—Central States argues that the constructive trust / equitable lien created by the Plan's terms establish that it is entitled to those funds and Defendants' failure to reimburse the Plan is a breach of their duties as trustees and fiduciaries.   This analysis is without merit.

### a.    Basis of Claim

Central States attempts to establish that the basis of their claim is equitable by arguing that the Court in *Sereboff* "sharpened its focus on plan provisions" and found the ERISA plan enforceable in equity because "it is indistinguishable from an action to enforce an equitable lien established by agreement."    *Sereboff*, 547 U.S. at 368.   Central States then turns to *McCutchen*, which it cites for the proposition that "equitable defenses cannot override the clear terms of a plan."   *See* 133 S. Ct. at 1543.   Taken together, Central States argues that the Court has established that Plan rules should be enforced against Defendants—who are not parties to the ERISA Plan— because "the plan's rights would not be diminished by equitable defenses" and "when the express contract term contradicts the equitable rule, the agreement must govern."    Because the Plan's COB provisions "make the Defendants primary [insurer] for the medical payments that Central States paid on behalf of its covered dependents, and its reimbursement provisions grant Central States the right to seek reimbursement from any responsible party," the terms of the Plan establish the type of equitable lien required to allow recovery of monetary damages in equity.

No. 13-10705

This joint-reading of *Sereboff* and *McCutchen* is far too broad.  While *Sereboff* certainly focused on the terms of the plan, it did not establish that plan provisions *generally* are indistinguishable from equitable liens, thereby creating a universal basis for equitable claims.  Nor did *McCutchen* establish that plan provisions trump either § 502(a)(3)'s requirement that relief be equitable or general contract rules regarding who is bound by an agreement.  In *Sereboff*, the plan provision—between the beneficiary and the fiduciary—was analogous to a contract to convey a specific res once it was received.  547 U.S. at 363-64; *see also ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 527-28 (5th Cir. 2013) ("Under . . . *Sereboff* . . . the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient.") (emphasis removed).  This contract "created a lien" on the specific assets to be conveyed under the contract.  *Sereboff*, 547 at 364.  It was this provision of the plan—*i.e.*, the contract between beneficiary and fiduciary to convey specified funds upon receipt—that created the equitable lien which served the basis for the plaintiff's claim.  *Id.*  No such basis exists for Central States' COB provision.  ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets.  And *McCutchen*—rather than establishing the primacy of ERISA plan provisions over the requirements of equity—only enforced the plan provisions in order to "hold[] the parties to their mutual promises."  133 S. Ct. at 1546; *see also id.* (finding that the court must "declin[e] to apply rules—even if they would be 'equitable' in a contract's absence—[that are] at odds with the parties' expressed commitments").  *McCutchen* was about the enforcement of contracts, and cannot be read as eliminating the "appropriate equitable relief" requirement of § 502(a)(3).

13

The progression of Central States' argument next attempts to establish that Defendants are both trustees and fiduciaries of Central States' Plan. These arguments are without merit. Central States admits that Defendants have not been named trustees of the Plan. Instead, they describe Defendants as "constructive trustees," defined as those who "hold[] property in constructive trust for the benefit of the beneficiary and [are] under a duty to account for the funds [they] hold in constructive trust." None of Central States' cases demonstrates that Defendants meet this description. Defendants are not similar to the plan fiduciaries in *CIGNA*, "whom ERISA typically treats as a trustee," 131 S. Ct. at 1879; nor have they entered into the equivalent of a contract to hold assets as a trustee, as in *Sereboff*, 547 U.S. at 363-64. Their only plausible rationale for establishing a "duty to account" for the funds they hold was their reliance upon *Sereboff* and *McCutchen* to establish that Defendants are bound by the provisions of their plan. As discussed, that argument fails, and so does the argument that Defendants are constructive trustees.

Central States also argues that Defendants are fiduciaries of the ERISA fund. ERISA "provides that not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets" is a fiduciary. *Mertens*, 508 U.S. at 251 (internal citations omitted). "Fiduciaries are assigned a number of detailed duties and responsibilities, which include 'the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.'" *Id.* at 251-52. Central States argues that Defendants "exercised discretion" over the Plan's assets by refusing to reimburse Central States for its medical bills, thereby "forc[ing] Central States to expend funds to pay medical bills which were not its responsibility to pay."

"Discretion" is defined as "individual judgment; the power of free decision-making." Black's Law Dictionary 534 (9th ed. 2009). The Defendants cannot be said to exercise "the power of free decision-making" over Central States' assets. It is obvious that Defendants have no say in the management of the Plan, its administration, or its assets, as they could no more have ordered the claims paid than ordered them denied. Further, they have no duties or responsibilities to the Plan: there is no evidence that they maintain records for Central States, disclose information on its behalf, check for conflicts of interest, or have any say in the investment of assets. It cannot even be said that Defendants "forced" Central States to pay these claims; that decision was made without consulting Defendants. Central States challenges Defendants' decision not to reimburse them after the fact, which is distinct from "forcing" payment in the first instance.

Because Central States cannot establish that the basis of their claim is equitable, we affirm the district court's dismissal of Counts II-IV for failure to state a claim. For the sake of completeness, we will also address the nature of the remedy sought.

### b.   Nature of Remedy

Central States argues that *Sereboff* marks the beginning of the Court's "first step away from the tracing requirements that historically afflicted the imposition of an equitable lien," and claims—without citation—that the courts have since "moved away from any tracing requirement, indicating that tracing identifiable funds is not essential to a claim for an equitable lien." It also relies on *CIGNA* for the uncontroversial proposition that monetary damages are available in equity for breach of fiduciary duty. Taken together, Central States believes these precedents render its inability to identify a particular fund irrelevant to the question of whether it seeks an equitable remedy under § 502(a)(3).

Central States' analysis is incorrect.  Contrary to its assertion, *Sereboff* did not move away from any tracing requirement; it distinguished between equitable liens by agreement—which do not require tracing—and equitable liens by restitution—which do.  Since Central States admits that it is "not suing to enforce a lien by agreement," the requirement that the res be traceable is still very much intact (to the extent it seeks a lien by restitution).  Central States cannot trace its claim to a particular fund.  Unlike *Sereboff, Great-West*, and *McCutchen*, there is no "specifically identified . . . particular fund[] distinct from [Defendants'] general assets."  *Sereboff*, 547 U.S. at 364.  As the Court stated in *Great-West*, the basis for petitioners' claim is that "petitioners are contractually entitled to *some* funds for the benefits that they conferred.  The kind of restitution that petitioners seek, therefore, is not equitable . . . but legal—the imposition of personal liability for the benefits that they conferred upon respondents."  534 U.S. at 214.  The funds in question are simply the general assets of Defendants, which were not received from, and have not been promised to, Central States.  Any relief sought as restitution is not equitable.

Finally, the relief provided in *CIGNA* was limited to the breach of a fiduciary's duty, and its holding was explicitly limited to that situation.  Because Central States cannot plausibly establish that Defendants were either fiduciaries or trustees, this theory of equitable relief fails.

### 2.    Central States' ERISA-based Subrogation Rights

Although Central States has affirmatively waived its state-law subrogation claims, it asserts a right to bring subrogation claims on behalf of its beneficiaries under § 502(a)(3), seeking "equitable relief, in the form of money compensation."   It argues "[t]he reasons why an ERISA plan's subrogation provisions should be enforced under § 502(a)(3) are the same reasons which support the enforcement of COB provisions."  But ERISA plan beneficiaries—like Central States itself—can only bring claims for

"appropriate equitable relief." Whether Central States can exercise its subrogation rights to sue under § 502(a)(3) is irrelevant if it does not request appropriate equitable relief. Because Central States' subrogation claims are identical to its claims as a fiduciary, we affirm the district court's dismissal of Count V.

## II.    There is No Gap in ERISA's Enforcement Scheme Requiring a Federal Common Law Claim for Unjust Enrichment.

Central States argues that if this court fails to find a substantive right to equitable restitution under § 502(a)(3) to enforce its COB provisions, then federal common law must step in to fill a "gap" in the ERISA statutory scheme, as a failure to do so would leave Central States with no means of enforcing the COB provisions of its policy. While federal common law may be applied to fill "minor gaps in ERISA's text, as long as the federal common law rule created is compatible with ERISA's policies . . . federal courts do not have authority under ERISA to create federal common law when that statute specifically and clearly addresses the issue before the Court." *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 329-30 (5th Cir. 2004) (internal quotation marks, alterations, and footnotes omitted). If a statute specifically and clearly addresses the issue, there is no gap to fill, and "a court's general opinion as to what remedies might further ERISA's underlying policies will not be sufficient to overcome the words of its text regarding the *specific* issue under consideration." *Id.* at 330 (internal quotation marks and footnotes omitted).

Central States' argument is foreclosed by the text of § 502(a)(3). As this court stated in *Ogden*, a fiduciary's "entitlement to a federal common law remedy is dependent on our determining that a gap exists in ERISA's text regarding [the fiduciary's] right, as a plan fiduciary, to bring an action for a money judgment enforcing a participant's *contractual* reimbursement obligation." *Id.* No gap exists.

> Congress, in drafting § 502(a)(3)(B) to allow only "equitable relief," specifically contemplated the possibility of extending to plan fiduciaries a right to sue a participant for money damages and chose instead to limit fiduciaries' remedies to those typically available in equity. As ERISA's text "specifically and clearly addresses" the issue whether CBA, as a plan fiduciary, has a right to pursue a claim for legal relief against Ogden, there is no "gap" in ERISA on this question and thus no basis for granting CBA a federal common law remedy.

*Id.* at 332. The only difference between this case and *Ogden* is that Central States is seeking reimbursement from a non-ERISA insurance plan, not a beneficiary. Section 502(a)(3)'s language restricting Central States to suits in equity applies with equal force to Plan beneficiaries as it would to non-ERISA insurance companies. There is no principled reason to distinguish between the two.

Central States' objection that it will be left without a remedy is unavailing. It has whatever "appropriate equitable relief" it can bring to enforce the provisions of the Plan; the only limitation is that they have to be equitable, which is Congress's intent, not a gap. But even assuming that Central States is correct about the unavailability of other remedies to enforce its COB rights against non-ERISA plans,[3] "vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Id.* at 331.

Because there is no gap for the federal common law to fill, we affirm dismissal of Count VI.

---

[3] Central States has abandoned its argument that its state-law subrogation rights under the ERISA Plan allow it to enforce its beneficiaries' provisions against the Defendants, agreeing with the district court's determination that those rights are preempted by ERISA.

No. 13-10705

### III.    Count I does not adequately state a claim for equitable relief under ERISA § 502.

Central States argues that Count I should not be dismissed because its "request for declaratory judgment does not amount to a demand for payment" and "seeks no reimbursement from the Defendants." It argues that Count I seeks only a "declaration of rights against Defendants regarding coverage for unpaid present and future bills."

Central States' claim is demonstrably false. Count I does not request a declaratory judgment, but rather asks this court to "requir[e] defendants to pay any unpaid present and future covered medical expenses." And as Central States asserts in its brief, "a declaration that the Defendants are responsible for future medical bills of the Insureds would support Central States' claim for equitable restitution for amounts already paid by Central States." Count I does not seek a declaration of liability under conflicting plans, but a judgment through which it can continue to pursue its goal of receiving monetary compensation not authorized by § 502(a)(3).

Further, to the extent that Central States is seeking a prospective declaration of payment obligations—which would allow the parties to determine who must pay first in the event of future injury—the issue is not ripe for review. The complaint contains no allegation that any of the eleven insureds have sustained new injuries creating a dispute over who must pay their claims. Absent a concrete injury, there is no controversy, and such a claim is not justiciable. *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 541 (5th Cir. 2008) ("Because plaintiffs failed to demonstrate that their claims involve an actual case or controversy, the claims were not justiciable and should not have been addressed by the district court.").

We affirm the district court's dismissal of Count I for failure to state a claim under § 502(a)(3).

19

No. 13-10705

## CONCLUSION

For the reasons stated, the judgment is AFFIRMED.