NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3924
_____

CENTRAL STATES, SOUTHEAST AND SOUTHWEST
AREAS HEALTH AND WELFARE FUND, as an Employee
Welfare Benefit Plan; ARTHUR H. BUNTE, JR.,
a Trustee thereof, in his representative capacity,

Appellants

v.

BOLLINGER, INC.; MONUMENTAL LIFE INSURANCE
COMPANY; MARKEL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-13-cv-02760)
Honorable Stanley R. Chesler, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
June 9, 2014

BEFORE:  AMBRO, GREENBERG, and BARRY, Circuit Judges

(Filed: July 15, 2014)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.


I.  INTRODUCTION

Appellant, Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States"), an employee welfare benefit plan, paid medical expenses on behalf of individuals pursuant to agreements subject to the Employment Retirement Income Security Act of 1974 (ERISA). Central States claimed that appellee insurance companies were primarily responsible for paying certain expenses it had paid and it sued the appellees and their policy administrator to recover these expenditures in the amount of $194,212.25. The District Court dismissed a complaint that Central States and its trustee brought under ERISA § 502(a)(3), which authorizes ERISA plan administrators only to bring claims for equitable relief, not for money damages. Central States appeals from that ruling, and we will affirm.

## II. BACKGROUND

Central States provides welfare benefits to Teamsters and their dependents under an ERISA-governed plan.[1] This suit concerns medical expenses of 19 individuals, all dependents of participants in Central States' plan (the "dependents"), who sustained injuries in accidents occurring at various facilities, including secondary schools, colleges, sports camps, and churches. Appellees, Monumental Life Insurance Company and Markel Insurance Company, issued policies to the entities responsible for the facilities

---

[1] We draw the facts from Central States' complaint and the provisions of its benefits plan, which it attached as an exhibit to its complaint. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that on a motion to dismiss courts generally can consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

insuring against medical claims arising from accidental injuries at those locations. Appellee, Bollinger, Inc., administered the policies.

Central States characterizes the insurance that appellees wrote as "overlapping" coverage, which is subject to the coordination of benefits (COB) provision included in Central States' plan. Appellants' br. at 14. According to Central States' COB provision, insurers who provide overlapping coverage are primary insurers—and consequently must bear the costs of treatment of the Central States' plan's dependents having claims within the scope of the insurers' policies—if the insurer does not have a COB provision in its policy, if it writes specific risk coverage, such as coverage for premises liability, or if it provides benefits directly to the insured, as distinguished from a dependent. Central States' plan also authorizes it to seek recovery of benefits it mistakenly paid that should have been paid by another entity.

According to Central States' COB provisions, appellees were the dependents' primary insurers for the medical expenses involved here, so Central States sought reimbursement for the expenditures it had made on the dependents' behalf. Appellees refused to pay, contending instead that they issued "excess policies," which are "designed to supplement any other insurance or plan." J.A. 104. Appellees argued that these policies provide coverage only if Central States first "contribute[s] its maximum plan benefits." Id.

On April 30, 2013, Central States filed the complaint in this case in the District Court seeking reimbursement from appellees for the medical expenses it had paid on the dependents' behalf. Specifically, Central States requested (1) a declaratory judgment

3

requiring appellees to pay unpaid present and future covered medical expenses; (2) a declaratory judgment requiring appellees to pay covered medical expenses that Central States already had incurred and a finding that Central States is a secondary, not primary, insurer; (3) restitution for the payments Central States had made; and (4) an equitable lien or constructive trust on appellees' assets to the extent that Central States paid the medical expenses as it contended that appellees had been unjustly enriched to the extent of those payments.  Appellees moved to dismiss pursuant to Federal Rule 12(b)(6) on the ground that § 502(a)(3) did not authorize the action.  The District Court granted the motion on August 22, 2013.  Central States, Se. and Sw. Areas Health & Welfare Fund v. Bollinger, Inc., No. 13-2760, 2013 WL 4502083 (D.N.J. Aug. 22, 2013).  Central States timely appealed from the order of dismissal.[2]

---

[2] Central States has filed substantially identical claims against different insurers in three other jurisdictions.  In two cases, filed in New York and Texas, the district courts dismissed Central States' complaints on the ground that § 503(a)(3) barred the complaint.  See Central States, Se. & Sw. Area Health & Welfare Fund v. Gerber Life Ins. Co., 984 F. Supp. 2d 246, (S.D.N.Y. 2013); Central States, Se. & Sw. Areas Health & Welfare Fund ex rel. McDougall v. Health Special Risk, Inc., No. 11-CV-2910, 2012 WL 5006054 (N.D. Tex. Oct. 18, 2012), aff'd, No. 13-10705, __ F.3d __, 2014 WL 2853587 (5th Cir. June 23, 2014).  Although Central States' complaint in the third case which it filed in Michigan was identical to the others it filed, the Michigan court ruled in its favor on the merits without considering the effect of § 502(a)(3).  Central States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc., 848 F. Supp. 2d 805 (W.D. Mich. 2012).  The Court of Appeals for the Sixth Circuit affirmed the district court's decision to the extent it held that the defendant was primarily responsible for paying the disputed claims, but reversed the court's monetary award and ruled that the relief sought by Central States was not equitable, and thus was not available under § 502(a)(3).  Central States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc., __ F.3d __, 2014 WL 2933225 (6th Cir. July 1, 2014).

### III. JURISDICTION and STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1),[3] and we have jurisdiction under 28 U.S.C. § 1291. We apply plenary review on appeal from dismissals under Rule 12(b)(6). Renfro v. Unisys Corp., 671 F.3d 314, 320 (3d Cir. 2011). We must "accept as true all well-pled factual allegations in the complaint, and view them in the light most favorable to the plaintiffs." Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.), 677 F.3d 178, 182 (3d Cir. 2012).

### IV. DISCUSSION

ERISA provides a "carefully crafted and detailed enforcement scheme." Mertens v. Hewitt Assocs., 508 U.S. 248, 254, 113 S.Ct. 2063, 2067 (1993). The case centers on ERISA § 502(a)(3), which authorizes an ERISA participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29

---

[3] We note that in Sackman v. Teaneck Nursing Center, 86 F. App'x 483 (3d Cir. 2003), which we discuss below, we held that a district court did not have jurisdiction over an unjust enrichment claim brought under § 503(a)(3). We think, however, that the District Court in this case had jurisdiction but that Central States' claim fails on the merits. See Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 276-77 (3d Cir. 2007) (noting that a substantial, non-frivolous claim for relief under section 502(a)(3) is enough to confer subject matter jurisdiction). For our purposes the distinction is not material as under both approaches the case would be dismissed.

U.S.C. § 1132(a)(3). The Supreme Court has read two important limitations into the scope of ERISA's remedial scheme.

First, given the detailed enforcement mechanisms within the statute, the Court has stated that "Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" Mertens, 508 U.S. at 254, 113 S.Ct. at 2067 (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092 (1985)). The available remedies for an alleged injury by reason of the matters listed in § 502(a)(3) thus are limited to those provided in the statute.[4]

Second, and most relevant to this appeal, the Supreme Court has defined "other appropriate equitable relief" to mean only "'those categories of relief that were typically available in equity.'" Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 122 S.Ct. 708, 712 (2002) (quoting Mertens, 508 U.S. at 256, 113 S.Ct. at 2069). Thus, to distinguish between equitable relief (which is available under § 502(a)(3)) and legal relief (which is not available) courts must determine whether the relief "would have been equitable 'in the days of the divided bench.'" Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 362, 126 S.Ct. 1869, 1874 (2006) (quoting Great-West, 534 U.S. at 212, 122 S.Ct. at 714)). "'Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages'" and may not be brought under § 502(a)(3). Great-West, 534 U.S. at 210, 122 S.Ct. at 713 (quoting Bowen v. Massachusetts, 487 U.S. 879, 918-

---

[4] In light of this clear directive from the statute and the Supreme Court, we reject an invitation that Central States has extended to us to go beyond the statute and create a remedy using federal common law.

19, 108 S.Ct. 2722, 2745 (1988) (Scalia, J., dissenting)) (internal quotation marks omitted). Although this limitation on ERISA actions sometimes may preclude petitioners from bringing valid claims, the Court determined that this outcome was a necessary consequence of Congress's resolution of the "tension" between ERISA's competing goals of benefitting employees and containing pension costs. Mertens, 508 U.S. at 262-63, 113 S.Ct. at 2071-72.

Whether a claim is legal or equitable depends on both (1) the nature of the recovery sought and (2) the basis for the plaintiff's claim. See Great-West, 534 U.S. at 213, 122 S.Ct. at 714; see also Sereboff, 547 U.S. at 363, 126 S.Ct. at 1874. Although Central States attempts to portray its claim as equitable, we agree with the District Court that it is legal and thus is not actionable under § 502(a)(3).

### A. Nature of Relief Sought

Regardless of how a plaintiff labels the relief it seeks in a complaint, a suit seeking a result that a defendant is liable to pay money to the plaintiff may not be brought under § 502(a)(3) unless the plaintiff is seeking to recover particular, traceable funds in the defendant's possession. See Sereboff, 547 U.S. at 362-63, 126 S.Ct. at 1874. The Court explained this restriction in Great-West, in which an ERISA-regulated plan paid a beneficiary's medical expenses after she was involved in a car accident. Great-West, 534 U.S. at 207, 122 S.Ct. at 711. The beneficiary settled a tort suit against the car's manufacturer, but the proceeds of the settlement were not paid directly to her—instead, the funds were deposited into a trust account set up on her behalf. Id. at 208, 122 S.Ct. at 711. Great-West sued various potentially liable parties under § 502(a)(3) to recover the

7

full value of the medical expenses it had paid, arguing that its claim was equitable as it sought injunctive and specific performance relief compelling the performance of a contract, id. at 210, 122 S.Ct. at 713, and restitution, id. at 212, 122 S.Ct. at 714.

The Supreme Court rejected both formulations of the relief Great-West sought. It found the request for an injunction to compel the payment of money to be nothing more than a request for money damages, which was "not typically available in equity." Great-West, 534 U.S. at 210, 122 S.Ct. at 713; see also id. at 211 n.1, 122 S.Ct. at 713 n.1 (noting that "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction"). In considering the restitution claim, the Court distinguished between claims for repayment "in which the plaintiff could not assert title or right to possession of a particular property," and claims where the plaintiff sought money or property that "could clearly be traced to particular funds or property in the defendant's possession." Id. at 213, 122 S.Ct. at 714 (internal quotation marks omitted). Only in the latter circumstance was there a situation in which a claimant of the funds could assert a claim for restitution in equity. Id. "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Id. at 214, 122 S.Ct. at 714-15 (emphasis added). As the settlement proceeds—the basis for Great-West's claim—were not in the beneficiary's possession, relief was not available under § 502(a)(3).

However, an insurer may sue under § 502(a)(3) to recover settlement proceeds that are in a plan beneficiary's possession and control. Sereboff, 547 U.S. at 362-63, 126

8

S.Ct. at 1874-75. The material facts in Sereboff were not distinguishable from those in Great-West, except that the plan's beneficiaries in Sereboff retained the settlement proceeds which thus were not placed into a trust as had been done in Great-West. Id. at 360, 126 S.Ct. at 1872. Distinguishing Great-West, the Court held that the plaintiff sought a restitution remedy in Sereboff that was equitable, not legal, because the insurer "sought specifically identifiable funds that were within the possession and control of the Sereboffs." Id. at 362-63, 126 S.Ct. at 1874 (internal quotation marks omitted).

Central States attempts to cast the relief it seeks as equitable, using terms such as restitution, equitable lien, constructive trust, and declaratory judgment.[5] Nevertheless none of its arguments convince us that it is seeking relief that differs from the relief that a successful plaintiff can obtain in an action to impose personal liability on a defendant for money damages. See, e.g., J.A. 105-06 (requesting declaration that appellees were

_____

[5] Central States argues that its requests for declaratory judgments are not requests for money damages, but rather for declarations "that its Plan's COB rules are enforceable against the" appellees. Appellants' br. at 45. We think it clear, however, that such requests simply seek a recovery equal to the sum of money that Central States had paid though it does so by using equitable nomenclature. Cf. Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 319 (3d Cir. 2013) (noting, in Eleventh Amendment context, that "we must 'look to the substance rather than the form of the relief requested'" (quoting Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698 (3d Cir. 1996)). We also point out that we have not overlooked appellees' contention that even if the requests for a declaration were permissible under § 502(a)(3) (which they are not), such prospective relief would not come within the constitutional doctrine requiring us to adjudicate only actual "Cases" or "Controversies." See U.S. Const. art. III § 2. Hypothetical, speculative, or future conflicts are not enough to satisfy Article III. See Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S.Ct. 1660, 1666-67 (1983); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-30, 127 S.Ct. 764, 772-75 (2007) (indicating "case or actual controversy" requirement in the Declaratory Judgment Act is coextensive with Article III). We, however, do not rest our decision on appellees' constitutional argument as we are deciding the case on statutory grounds.

required "to pay unpaid present and future covered medical expenses"); J.A. 107 (requesting, under heading "declaratory judgment," "an injunction requiring the [appellees] to pay covered medical expenses . . . and to fully reimburse Central States" for payments already made); J.A. 109-110 (requesting restitution of payments made); J.A. 110-11 (requesting "equitable lien upon sums constructively held by the [appellees]"). Indeed, Central States' complaint and briefs strike us as precisely the type of "lawyerly inventiveness" about which the Supreme Court cautioned in Great-West and which we consistently have rejected. See, e.g., Eichorn v. AT&T Corp., 484 F.3d 644, 655 (3d Cir. 2007) (finding claim "for compensatory damages merely framed as an 'equitable' injunction" not actionable under § 502(a)(3)); Providence Health Plan v. McDowell, 385 F.3d 1168, 1174 (9th Cir. 2004) (rejecting purported legal remedy despite plaintiff's "attempt to disguise its claim in equitable clothes").

We rejected a claim almost identical to that which Central States makes here in a not precedential opinion, Sackman v. Teaneck Nursing Center, 86 F. App'x 483, 485 (3d Cir. 2003). The plaintiffs, trustees of a health and benefit fund, had paid the defendant's employees' medical claims which it argued that the defendant should have paid. We held that the complaint must be dismissed because there was no "specific block of money" that had passed from the plaintiffs to the defendant. Consequently, the plaintiffs' restitution claim sought a legal remedy and thus was unavailable under § 502(a)(3). Id. Likewise, Central States wants appellees to reimburse it for expenses for which it alleges they are responsible but does not seek that they be compelled to return a "specific block of money" that appellees received improperly. Accordingly, regardless of how many

10

different labels Central States applies to its claims, fundamentally it is seeking an order compelling appellees to pay it a sum of money that is not segregated from appellees' other assets. Such an attempt does not seek equitable relief.

B. Basis of the Claim

Section 502(a)(3) also bars Central States' claim because the basis for the claim is not equitable. In Sereboff, after determining that the insurer sought equitable relief, the Court moved to a second inquiry, asking whether it could establish that "the basis for its claim is equitable." 547 U.S. at 363, 126 S.Ct. at 1874. The Court answered in the affirmative, finding that the insurer's claim was to enforce an "equitable lien by agreement" based on a plan provision requiring beneficiaries to turn over any funds received from a third party. Id. at 364-65, 126 S.Ct. at 1875-76. The Court relied on an earlier case, Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276 (1914), in which lawyers by contract were promised one-third of a contingent fee in exchange for legal work on a particular case. When the contingent fee was paid, the lawyers became entitled to an equitable lien by agreement on a portion of the recovered fee equal to the portion to which their agreement entitled them even though the subject of the lien did not exist when the parties executed the contract for their services. See Sereboff, 547 U.S. at 365-66, 126 S.Ct. at 1875-76. Sereboff held, applying Barnes' teaching, that although the fund over which the insurer asserted a lien did not exist when the plan was executed, its claim was nonetheless equitable under the "familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as

11

soon as he gets a title to the thing." Id. at 367, 126 S.Ct. at 1877 (quoting Barnes, 232

U.S. at 121, 34 S.Ct. at 278) (internal quotation marks and brackets omitted).

Central States contends that this language, along with other Supreme Court

decisions interpreting § 502(a)(3), qualify its claim as an equitable lien by agreement,

thus permitting it to recover from appellees the funds it expended on the dependents.

Central States is mistaken. The key to the equitable liens by agreement that the Supreme

Court recognized in Barnes and Sereboff was an agreement between the parties: the

lawyers suing in Barnes had an agreement to recover fees, 232 U.S. at 119, 34 S.Ct. at

277, and the plaintiffs in Sereboff expressly agreed in their insurance policy to reimburse

their insurer for benefits the insurer paid if the plaintiffs recovered money by reason of

the accident from a third party, Sereboff, 547 U.S. at 359, 126 S.Ct. at 1872. Here, by

contrast, Central States does not claim that it had any agreement with appellees with

respect to the expenditures at issue in this case. We have explained that an equitable lien

by agreement is "a lien arising out of an agreement to convey ownership of specific

property to one party as soon as the counterparty gets title to the property." Funk v.

CIGNA Grp. Ins., 648 F.3d 182, 194 (3d Cir. 2011) (emphasis added) (citing Sereboff,

547 U.S. at 363-65, 126 S.Ct. at 1874-76); see also US Airways v. McCutchen, 133 S.Ct.

1537, 1545 (2013) (affirming Sereboff's holding that insurer can bring action to enforce a

contract-based lien under § 502(a)(3)). Absent a contract or other enforceable agreement

underlying the claim asserted, and there is none here, we cannot impose an equitable lien.

Central States ultimately makes a policy argument: it complains that, without a

remedy under § 502(a)(3), appellees and other similarly situated insurers can avoid

12

liability for claims on which they are obligated simply by letting Central States and other ERISA plans foot the bill in the first instance, and then refusing to reimburse them. But they assert the policy argument to no avail because "'whatever merits policy arguments may have, it is not the province of courts to rewrite the statute to accommodate them.'" Sweger v. Chesney, 294 F.3d 506, 518 (3d Cir. 2002) (alterations omitted) (quoting Artuz v. Bennett, 531 U.S. 4, 10, 121 S.Ct. 361, 365 (2000)); see also Mertens, 508 U.S. at 261, 113 S.Ct. at 2071 ("[V]ague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration."). Central States' claims do not fall within the limited authority provided by § 502(a)(3). This circumstance—dictated by the plain language of ERISA and Supreme Court jurisprudence—ends our inquiry.

## V. CONCLUSION

For these reasons, we will affirm the order of the District Court of August 22, 2013, dismissing the case.