In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 15-2237

CENTRAL STATES, SOUTHEAST AND SOUTHWEST
AREAS HEALTH AND WELFARE FUND,
an Employee Welfare Benefit Plan, by
ARTHUR H. BUNTE, JR., Trustee, in his
representative capacity,

*Plaintiffs-Appellants*,

*v.*

AMERICAN INTERNATIONAL GROUP, INC., *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 5195 — **John Z. Lee**, *Judge*.

_____

ARGUED DECEMBER 7, 2015 — DECIDED OCTOBER 24, 2016

_____

Before FLAUM, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. A self-funded ERISA plan has sued several independent health insurers seeking reimbursement for medical expenses it paid on behalf of beneficiaries who were covered under both the plan and the insurers' policies.

We're asked to decide whether a lawsuit like this one—a "coordination of benefits" dispute—seeks "appropriate equitable relief" under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Six circuits have held that section 502(a)(3) does not authorize suits of this type because the relief sought is legal, not equitable. We join this consensus and affirm the dismissal of the ERISA plan's suit.

## I. Background

Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States" or "the plan") is a self-funded ERISA plan that provides health coverage to participating Teamsters and their dependents. The plan's trustee filed suit on the plan's behalf seeking a declaratory judgment enforcing the plan's terms and awarding restitution on various theories. The defendants are insurance companies that underwrite and administer insurance policies for schools and youth sports leagues; their policies cover injuries sustained by young athletes while participating in athletic activities sponsored by these schools and leagues. The case arises from injuries sustained by student athletes who had medical coverage under both the Central States plan *and* the independent insurers' policies. The trustee alleges that the plan paid the beneficiaries' medical bills in full, in the total amount of about $343,000, and the insurers owe reimbursement.

The plan and the insurers' policies have competing coordination-of-benefits clauses, and each side claims that its respective provision makes the other primarily liable for the beneficiaries' medical expenses. Coordination-of-benefits disputes like this one are often resolved in state court in a declaratory-judgment action on an equitable-contribution

theory.[1] *See* 16 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 232:71 (3d ed. 2000).

But the trustee sued in federal court under section 502(a)(3) of ERISA (the Employee Retirement Income Security Act of 1974), which provides in relevant part that a participant, beneficiary, or fiduciary of an employee-benefits plan may bring a civil action "to obtain … *appropriate equitable relief* … to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B) (emphasis added). The trustee contends that the suit seeks "appropriate equitable relief" to enforce the plan's coordination-of-benefits provision.

More specifically, the trustee seeks: (1) a declaratory judgment that the insurers are primarily liable for "current unpaid and future medical expenses" incurred by athletes who are covered by both the plan and one of the insurers; (2) a declaratory judgment that the insurers are primarily liable for medical expenses for injuries already incurred and treated; (3) the imposition of an equitable lien on sums held by the insurers in the amount of the benefits paid by the plan; and (4) an order that the insurers must reimburse the plan, variously justified on restitution, unjust enrichment, and subrogation theories.

---

[1] These suits also may be brought on equitable-subrogation or equitable-indemnification theories. For a discussion of the distinction between equitable contribution on the one hand and equitable subrogation or equitable indemnification on the other, see *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307 (Ill. 2004), and 15 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 217:5 (3d ed. 1999).

The insurers moved to dismiss all claims. The district judge granted the motion on two different grounds. To the extent that the suit sought a declaratory judgment regarding future medical expenses, the judge held that it did not raise a controversy sufficient to invoke the court's power to award declaratory relief and dismissed that claim for lack of sub-ject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). The remaining claims were dismissed under Rule 12(b)(6) for failure to state a claim. The judge reasoned that the relief sought, though phrased in equitable terms, was not equita-ble relief within the meaning of section 502(a)(3).

## II. Discussion

### A. Jurisdiction

As always, our first question is subject-matter jurisdic-tion. We're satisfied that jurisdiction is secure over most of this case. The Central States plan has clearly been injured by the independent insurers' failure to reimburse it for the medical expenses it has paid, and its claim arises under a federal statute, section 502(a)(3) of ERISA. But the request for a declaratory judgment regarding the insurers' liability for "current unpaid and future medical expenses" is jurisdic-tionally problematic. For starters, the trustee's use of the phrase "current unpaid and future medical expenses" is odd. The amended complaint alleges that Central States paid the injured students' medical expenses in full. Accepting that as true, there are no "current unpaid" medical expenses at all. The trustee explains in his briefs that this request for relief relates to "prospective claims"—that is, claims that Teamsters' dependents *might* make for injuries sustained in the future.

This clearly raises ripeness concerns, as the district judge recognized.[2] The Declaratory Judgment Act permits a federal court to award a declaratory judgment only in "a case of actual controversy." 28 U.S.C. § 2201(a). This limitation is equivalent to the Constitution's general limitation on the jurisdiction of the federal courts. U.S. CONST. art. III, § 2, cl. 1; § 2201(a); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941). *Maryland Casualty* remains the leading statement on ripeness questions in the context of declaratory-judgment actions: A suit is ripe when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 312 U.S. at 273. The question is "necessarily one of degree," *id.*, and it "must be worked out on a case-by-case basis," 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2757 (3d ed. 1998).

The trustee's request for a declaratory judgment regarding expenses the plan has *already paid* is plainly ripe for adjudication; that claim involves a definite injury between parties with adverse legal interests. The declaratory-judgment request regarding *future* claims, however, is unripe. That request for relief arises from hypothetical benefits claims that have yet to be filed—indeed from injuries that have not yet occurred—so the controversy between

---

[2] The Supreme Court has held that ripeness is a jurisdictional question. *See, e.g, Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 n.13 (1991) ("[Ripeness] concerns our jurisdiction under Article III, so we must consider the question on our own initiative.").

the plan and the insurers is not of "sufficient immediacy" to invoke a federal court's jurisdiction.

Our decision in *Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178 (7th Cir. 1980), is instructive on this point. In *Solo Cup* we dismissed as unripe an employer's request for a declaration that its insurer must indemnify it for yet-to-be-filed lawsuits. The employer had settled one plaintiff's discrimination claim and sought indemnification for the settlement; that claim was clearly justiciable. *Id.* at 1183. In the meantime, the federal government had issued a report finding that the employer had discriminated against some 70 additional employees; the employer sought a judgment declaring that any sums it might have to pay on these potential discrimination claims would be within the indemnity coverage of the insurer's policy. *Id.* at 1188–89. That claim was unripe because "[t]he mere possibility that proceedings might be commenced against an insured … is not sufficient to create a controversy within the meaning of either the Declaratory Judgment Act or Article III of the Constitution." *Id.* at 1189.

The trustee's request here—for a declaration regarding payment of future claims—is even more remote. In *Solo Cup* the prospective claims against the insured were identifiable and had accrued but had not yet been filed. Here the trustee wants a declaration regarding hypothetical future medical claims arising from injuries that *have not yet occurred*. This aspect of the trustee's declaratory-judgment request is clearly unripe.

**B. Section 502(a)(3) and "Equitable Relief"**

Turning now to the merits of the remaining claims, we agree with the district judge that the relief sought is legal, not equitable, so the trustee's suit is not authorized under ERISA section 502(a)(3).

This is not the first time that Central States has sued insurers of schools and athletic leagues seeking reimbursement for medical expenses it paid on behalf of its beneficiaries. Six circuits have considered virtually identical claims by the plan. All have reached the same conclusion: The suit is not authorized under section 502(a)(3) because the relief sought is legal, not equitable. *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Student Assurance Servs., Inc.*, 797 F.3d 512 (8th Cir. 2015); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150 (2d Cir. 2014); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc.*, 573 F. App'x 197 (3d Cir. 2014); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954 (6th Cir. 2014); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc.*, 756 F.3d 356 (5th Cir. 2014).

These circuits rest their decisions on a quartet of Supreme Court cases interpreting the phrase "appropriate equitable relief" in section 502(a)(3): *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993); *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002); *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006); and *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013). The quartet has since become a quintet with the Court's recent decision in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651 (2016).

*Mertens*, the first in the series, involved a suit brought by ERISA beneficiaries against a nonfiduciary who participated in an alleged breach of fiduciary duty. The Court held that "appropriate equitable relief" is limited to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens*, 508 U.S. at 256. The Court held that the relief the ERISA beneficiaries sought was compensatory damages, which is "the classic form of *legal* relief" and therefore unavailable under section 502(a)(3). *Id.* at 255.

The next four cases—*Great-West*, *Sereboff*, *McCutchen*, and *Montanile*—all involved disputes between ERISA plans and beneficiaries over the proceeds of auto-insurance settlements. The ERISA beneficiaries suffered injuries in car accidents; the ERISA plans paid for the medical care to treat these injuries. When the beneficiaries settled with the drivers who caused the accidents, the ERISA plans demanded reimbursement from the settlement proceeds. The beneficiaries refused, and the ERISA plans brought restitution claims under section 502(a)(3) to enforce reimbursement provisions in their plan documents.

In *Sereboff* and *McCutchen*, the defendant beneficiaries held the settlement proceeds in segregated accounts or funds, and in each case the plans sought an equitable lien against the specifically identified account or fund; the Court held that this form of relief was properly regarded as equitable. In *Great-West* and *Montanile*, on the other hand, the defendant beneficiaries did *not* possess the settlement proceeds; the relief sought was money damages from the beneficiary's general assets, a quintessentially *legal* remedy. More specifically, in *Great-West* the proceeds of the settlement

were allocated to a trust rather than directly to the beneficiary, who was the defendant in the plan's suit; in *Montanile* the settlement proceeds were paid directly to the defendant beneficiary, but the record suggested that the money may have been dissipated before the ERISA plan filed suit.[3]

In each of these cases, the Court explained that whether a remedy is available under section 502(a)(3) "depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought"; *both* must be equitable to proceed under section 502(a)(3). *Montanile*, 136 S. Ct. at 657 (brackets and quotation marks omitted). The inquiry looks to "standard treatises on equity, which establish the basic contours of what equitable relief was typically available in premerger equity courts." *Id.* (internal quotation marks omitted).[4]

---

[3] To be precise, in *Montanile* the lower courts had not had occasion to determine whether the defendant beneficiary had fully depleted the settlement fund on nontraceable assets. Applying its prior cases, the Court held that a recovery against a beneficiary's general assets is *legal* rather than *equitable* relief, reversing the lower courts' decisions to the contrary, but remanded to permit the district court to determine whether the beneficiary had dissipated the entire settlement fund or comingled the fund with his general assets. *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 661–62 (2016).

[4] *But see* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 4 cmt. a (AM. LAW INST. 2011) (Some federal statutes "arguably necessitate[] an inquiry into the legal or equitable nature of the relief sought … . Resolution of such problems turns on issues … that are beyond the reach of legal history and outside the scope of this Restatement."); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT ch. 7, topic 2, intro. note (AM. LAW INST. 2011) ("Lingering effects of [the law/equity distinction] on the remedies available under

Importantly, the Court made it clear that simply phrasing the request for relief in equitable terms—e.g., restitution, unjust enrichment, an equitable lien—is not dispositive. The remedy is properly regarded as equitable *only* if the plaintiff seeks the return of "specifically identified funds that remain in the defendant's possession or … traceable items that the defendant purchased with the funds (*e.g.*, identifiable property like a car)." *Id.* at 658. A section 502(a)(3) suit wasn't available in either *Great-West* or *Montanile* because the plaintiffs hadn't pointed to specifically identifiable funds in the defendant's possession to which an equitable lien could attach.

The trustee hasn't done so here either, so he cannot proceed under section 502(a)(3) on any of the theories he styles as "restitutionary." He can't point to specifically identifiable funds in the insurers' possession because the insurers never received any funds at all. They may have avoided what the trustee claims are their contractual obligations to the insureds and in that sense realized a monetary benefit. But no matter what the trustee calls his claim, he is seeking a recovery from the insurers' general assets. His request for declaratory relief seeks an order requiring the insurers to reimburse the plan—in other words, he asks for money damages, the epitome of legal relief. That kind of suit is unavailable under section 502(a)(3). *Great-West*, 534 U.S. at 210 ("Almost invariably … suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' … since they seek no more than compensation for loss resulting from the

---

particular statutes or on the right to jury trial are outside the scope of this Restatement.").

defendant's breach of legal duty.") (quotation marks omitted).

The trustee offers several arguments to avoid this conclusion, but all fail. First, he invokes the equitable roots of his various restitutionary theories. As we've noted, however, the Supreme Court has repeatedly held that even if the basis for a claim is equitable, the relief sought must be equitable as well and that requires identifying specific funds in the defendant's possession. *Montanile*, 136 S. Ct. at 657. The Court has given us no indication that this requirement applies to some but not all of the three traditionally equitable theories by which a plaintiff may obtain restitution: equitable lien, constructive trust, and subrogation. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 56 cmt. a (AM. LAW INST. 2011). And the *Restatement* makes clear that all of these remedies "confer either rights of ownership or a security interest in specifically identifiable property in the hands of the defendant." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT ch. 7, topic 2, intro. note (AM. LAW INST. 2011). Regardless of how the trustee characterizes his claims, the relief he seeks isn't equitable in nature, and a suit under section 502(a)(3) is therefore unavailable.

Second, the trustee argues that allowing his suit is consistent with ERISA's "underlying purpose[s]" of protecting plan assets and enforcing plan terms. For support he relies on the Supreme Court's opinion in *King v. Burwell*, 135 S. Ct. 2480 (2015). But the Court has heard this argument before in the context of section 502(a)(3) suits and has consistently rejected it. *Montanile*, 136 S. Ct. at 661 ("[V]ague notions of a statute's 'basic purpose' are … inadequate to overcome the

words of its text regarding the specific issue under consideration." (quoting *Mertens*, 508 U.S. at 261)).

Finally, the trustee relies on two cases from this court in which we permitted ERISA plans to litigate coordination-of-benefits disputes against other insurers: *Winstead v. Indiana Insurance Co.*, 855 F.2d 430 (7th Cir. 1988), and *Winstead v. J.C. Penney Co.*, 933 F.2d 576 (7th Cir. 1991). Both cases were decided before *Mertens*, the Supreme Court's first foray into the question of appropriate equitable relief under section 502(a)(3). These two early cases in our circuit cannot be reconciled with the Court's consistent instructions in *Mertens*, *Great-West*, *Sereboff*, *McCutchen*, and *Montanile*.

In closing, we recognize the dilemma this outcome creates for the plan. An equitable-contribution suit under state law is probably foreclosed by ERISA's broad preemption provision. *See generally United of Omaha v. Bus. Men's Assurance Co. of Am.*, 104 F.3d 1034 (8th Cir. 1997) (holding that ERISA preempts a state common-law subrogation claim in a dispute between two insurance companies over which company was responsible to pay for certain benefits). If ERISA plans can't bring section 502(a)(3) suits *or* state-law claims to obtain reimbursement from other insurers with overlapping coverage obligations, then they're left with just one way to ensure that they don't pay claims for which other insurers are primarily liable: refuse to provide coverage to beneficiaries who have other insurance and sue for a declaratory judgment that the other insurer is primarily liable. This approach leaves the ERISA beneficiary, "through no fault of his own, … considerably worse off for having two policies that coincidentally had conflicting language than he would be if he had only one." *Gerber Life Ins. Co.*, 771 F.3d at 159.

The trustee asks us to resolve this regrettable dilemma in the plan's favor. But that option is not open to us. It would directly contravene clear instructions from the Supreme Court on the scope of section 502(a)(3) and create a circuit split to boot. Accordingly, we now join our sister circuits and hold that the trustee's suit against the insurers to recoup amounts it paid for the beneficiaries' medical care seeks legal relief, not equitable relief, and as such is not authorized by section 502(a)(3).

AFFIRMED.