# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1846
No. 16-3319
No. 16-3375

_____

Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund,
by Randy Stainbrook and Edward Christian as Trustees

*Plaintiff - Appellee/Cross Appellant*

v.

First Agency, Inc.; Guarantee Trust Life Insurance Company

*Defendants - Appellants/Cross Appellees*

_____

Appeals from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: February 8, 2017
Filed: August 3, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Jacob Plassmeyer incurred medical expenses after injuring his knee during a collegiate baseball practice in February 2014. Jacob's college provided its student athletes insurance covering accidental injuries under a blanket policy issued by First

Agency, Inc., as appointee of Guarantee Trust Life Insurance Company (collectively referred to as "FA"). Jacob's father is also an insured participant in the Dakotas and Western Minnesota Electrical Industry Health and Welfare Fund ("Dakotas"), an employee welfare benefit plan. Jacob is covered under this ERISA plan as a dependent of his father. Jacob timely filed claims with both insurers. Though it is undisputed his baseball injuries are covered by both policies, both insurers refused to pay. FA claimed that Dakotas must pay first because FA's policy is "excess only." Dakotas claimed that, under the plan's coordination of benefits ("COB") provision, FA's coverage is primary. Jacob's claim remains unpaid.

The trustees of Dakotas brought this declaratory judgment action against FA under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), seeking an order enforcing the COB provisions in the Dakotas plan by declaring that FA's policy provides primary coverage of Jacob's claim for medical expenses already incurred. The district court[1] denied FA's motion to dismiss and granted Dakotas' motion for summary judgment, concluding that (i) § 502(a)(3) "allows ERISA plan trustees to bring a declaratory judgment action to determine the extent of the plan's liability," and (ii) under the plan's COB provision FA has primary responsibility for Jacob's covered medical expenses. Dakotas & Western Minn. Elect. Indus. Health & Welfare Fund v. First Agency, Inc., 2016 WL 1736619, at *4 (D.N.D. Mar. 11, 2016). FA appeals those rulings. Reviewing *de novo*, we affirm. In a separate Order, the district court granted Dakotas a reduced award of attorneys' fees and non-taxable costs. FA appeals the award; Dakotas cross appeals the reduced award. Reviewing for abuse of discretion, we reverse the award of attorneys' fees and non-taxable costs.

---

[1]The Honorable Ralph R. Erickson, then Chief Judge of the United States District Court for the District of North Dakota.

# I. The ERISA Remedy Issue.

ERISA is a "comprehensive legislative scheme" that includes "an integrated system of procedures for enforcement" that are "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quotation omitted). "The six carefully integrated civil enforcement provisions found in § 502(a) of [ERISA] provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) (emphasis in original). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . is therefore preempted. . . . [C]auses of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court." Davila, 542 U.S. at 209 (quotation omitted). This appeal concerns one provision, § 502(a)(3):

> A civil action may be brought --
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Dakotas' trustees, who are ERISA fiduciaries, are authorized to bring an action under § 502(a)(3) to obtain "other appropriate equitable relief . . . to enforce . . . the terms of the plan."[2] The action may be brought against FA, a private insurer, because § 502(a)(3) does not limit "the universe of possible defendants." Lyons v. Philip

---

[2]"A suit to enforce a coordination-of-benefits provision is a suit to enforce the plan in which the provision appears." Winstead v. J.C. Penney Co., 933 F.2d 576, 579 (7th Cir. 1991).

Morris Inc., 225 F.3d 909, 913 (8th Cir. 2000) (quotation omitted). The action presents a ripe controversy to determine which insurer has primary coverage for Jacob's claims for reimbursement of medical expenses he has already incurred. See Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).[3] However, FA argues on appeal, as it did in the district court, that Dakotas did not assert a claim seeking "appropriate equitable relief," the only relief available under § 502(a)(3)(B).

The comprehensive nature of § 502(a)'s remedies has made the Supreme Court "reluctant to tamper with an enforcement scheme crafted with such evident care." Russell, 473 U.S. at 147; see Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank, 500 F.3d 834, 837 (8th Cir. 2007). Thus, in Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993), the Court held that "equitable relief" in § 502(a)(3) is limited to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." In Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 210 (2002), an ERISA plan gave the plan a right to recover benefits paid if the beneficiary recovered from a third party. The plan brought a § 502(a)(3) action to enforce this provision by ordering a beneficiary to pay settlement proceeds from her general assets. The Court denied relief, rejecting the contention that this was a claim for equitable restitution within the purview of § 502(a)(3) because "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." Id. (quotation omitted).

---

[3]In the district court, FA argued that none of Dakotas' claims are ripe. Dakotas conceded that claims for future unpaid medical expenses are not ripe. See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Student Assur. Servs., Inc., 797 F.3d 512, 515 (8th Cir. 2015).

By contrast, in Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 362-63 (2006), the Court held that a § 502(a)(3) claim to recover restitution from a specifically identifiable fund was a claim for "appropriate equitable relief" because recovery of a specific asset is appropriately characterized as equitable restitution. Most recently, in Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan, 136 S. Ct. 651, 658 (2016), where the plan allowed a settlement fund to be dissipated before suing to recover benefits it had paid, the Court followed Knudson and denied § 502(a)(3) relief because "a personal claim against the defendant's general assets . . . is a *legal* remedy, not an equitable one." The Court explained that, "[t]o determine how to characterize the basis of a plaintiff's claim and the nature of the remedies sought, we turn to standard treatises on equity, which establish the basic contours of what equitable relief was typically available in premerger equity courts." Id. at 657 (quotation omitted).

A number of recent circuit court decisions involved cases in which injured student athletes had overlapping coverages from an ERISA plan and a private insurer. In each case, the ERISA plan paid the insured's claim, then sued the non-ERISA insurer to recover plan benefits paid by enforcing the plan's COB provisions. Though the plans asserted § 502(a)(3) equitable-sounding claims for restitution, an equitable lien, a constructive trust, or a declaratory judgment seeking reimbursement of ERISA benefits *already paid*, the courts uniformly applied the Knudson-Montanile analysis and denied relief because, no matter how the claim was styled, each plaintiff sought to recover money damages from the defendant insurer's general assets.[4]

---

[4]See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Am. Int'l Grp., Inc., 840 F.3d 448 (7th Cir. 2016); Student Servs., 797 F.3d at 515; Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co., 771 F.3d 150 (2d Cir. 2014); Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc., 756 F.3d 954 (6th Cir. 2014); Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc., 756 F.3d 356 (5th Cir. 2014); Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc., 573 F. App'x 197 (3d Cir. 2014).

FA argues this case is controlled by these precedents. We disagree. As the district court noted, in this case "[t]he medical expenses incurred by the common insured have not been paid. The [ERISA] plan does not seek to recover any payments, past or future." Dakotas, 2016 WL 1736619, at *2. Thus, we must consult "standard treatises on equity" and other relevant sources to determine whether Dakotas' request for a declaratory judgment enforcing the COB terms of its plan is an equitable claim seeking remedies typically available in equity. To our knowledge, this is a case of first impression, but we note that the Supreme Court in Sereboff commented, "ERISA provides for equitable remedies *to enforce plan terms*," precisely Dakotas' claim in this case, 547 U.S. at 363 (emphasis in original).[5]

"ERISA abounds with the language and terminology of trust law." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989). "[A] benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan." Davila, 542 U.S. at 219. Since the seventeenth century, chancery courts in England and the United States have entertained a proceeding, known as a bill for instructions, in which trustees may obtain a judicial ruling as to the proper course to pursue in handling property for the benefit of others, so as to immunize the trustees from liability when the issue is doubtful. See Executors' and Trustees' Bills for Instructions, 44 Yale L. J. 1433, 1433-35 (1935). "The court, if it sees fit to grant the application, will then cite such parties as it deems requisite to show cause why the determination requested by the fiduciary should not be made." Id. at 1436. "This power to grant instructions to trustees has long been viewed . . . as inherent in the equitable powers of courts having jurisdiction over trusts, although

---

[5]In the Sixth Circuit's Central States case, the district court granted a declaratory judgment under § 502(a)(3) declaring that FA had primary liability for future student losses, and the Sixth Circuit upheld the primary liability ruling while reversing the award of money damages as inappropriate § 502(a)(3) relief under Knudson. First Agency, 756 F.3d at 957-61.

this authority is generally now based on declaratory-judgment legislation." Restatement (Third) of Trusts § 71, cmt. a (2007).

Passed just four years prior to the merger of law and equity, the federal Declaratory Judgment Act, 28 U.S.C. § 2201, legitimized a previously controversial remedy which "is neither strictly equitable nor legal, though it has historical roots in equity." Edwin M. Borchard, Declaratory Judgments and Insurance Litigation, 34 Ill. L. Rev. 245, 259 (1939). Federal courts sitting in equity had considered declaratory actions to determine the liability of parties under insurance contracts. See Garrison v. Memphis Ins. Co., 60 U.S. 312 (1856); London Guar. & Acc. Co. v. Shafer, 35 F. Supp. 647, 648 (S.D. Ohio 1940). The Supreme Court, usually in determining whether the Seventh Amendment's right to jury trial applied to a cause of action, has treated the declaratory judgment action as "neither legal nor equitable," analyzing instead what claim would have been brought were a declaratory judgment not available. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 284 (1988); see Northgate Homes, Inc. v. City of Dayton, 126 F.3d 1095, 1099 (8th Cir. 1997) ("To determine whether there is a right to a jury trial in a declaratory judgment action, it is necessary first to determine the nature of the action in which the issue would have arisen absent the declaratory judgment procedure.").

In our view, this historical context establishes that the district court correctly held that Dakotas' declaratory judgment action is an equitable claim seeking remedies typically available in equity and therefore available under § 502(a)(3). Dakotas' trustees seek a judicial ruling on an uncertain question critical to proper performance of their fiduciary duties in administering plan assets and paying beneficiary claims -- a ruling traditionally available in courts of equity by a bill for instructions. Replacing that proceeding with a declaratory judgment action after the merger of law and equity hardly alters its essentially equitable nature. The declaratory relief Dakotas seeks, like the historical bill for instructions, operates coercively to enjoin FA from denying primary coverage, like coercive remedies traditionally available in equity, and unlike

the execution of a money judgment at law against the defendant's property. See 1 D. Dobbs, Law of Remedies § 1.4, 1.1, pp. 14-16, 7, 11 (2d ed. 1993). A declaration of the insurers' respective rights qualifies as "appropriate equitable relief," unlike the claims to recover money already paid from the other insurer's general assets at issue in Knudson and Montanile.[6]

The relief Dakotas seeks is consistent with the plain language of § 502(a)(3). It is also consistent with the broad purposes of ERISA. "We do no semantic violence to [§ 502(a)(3)] when we interpret it to allow an ERISA plan to bring a declaratory judgment action to determine the extent of its liability, and we promote the goals of ERISA by that interpretation." Winstead, 933 F.2d at 580. FA argues that this is a "run-of-the-mill contractual dispute" that should be resolved by Dakotas or the plan's beneficiary bringing an "ordinary state court" action. But a declaratory judgment action by an ERISA plan in state court is very likely preempted (though that issue is not definitively resolved). See Am. Int'l Grp., 840 F.3d at 454. Therefore:

> The paradoxical result is that as an ERISA plan, [Dakotas] has fewer remedies than it would if it were a non-ERISA plan, and its beneficiary, through no fault of his own, is considerably worse off for having two policies that coincidentally had conflicting language than he would be if he had only one. One might think that the underlying purposes of ERISA and of equitable relief generally would permit a court to fashion an appropriate remedy.

---

[6]We are mindful of the Supreme Court's caution that limiting the relief available under § 502(a)(3) to "whatever relief a common-law court of equity could provide [for a breach of trust] would limit the relief *not at all*." Mertens, 508 U.S. at 257. But the § 502(a)(3) relief sought in Mertens was compensatory damages from a non-fiduciary. In this case, an ERISA fiduciary seeks declaratory relief "to enforce . . . the terms of the plan," relief that was historically available in courts of equity. "Many claims in equity . . . had as their major purpose a declaration of rights, so that the plaintiff might proceed with an intelligent understanding of what he could and could not legally do." 1 D. Dobbs, Law of Remedies § 2.1(2), pp. 61 (2d ed. 1993).

Gerber, 771 F.3d at 159. Our conclusion that a declaratory judgment action to enforce the Dakotas plan as it applies to Plassmeyer's claim for benefits is both consistent with the plain language of § 502(a)(3), construed in light of historical equitable remedies available to trustees, and "avoids the anomaly of interpreting ERISA so as to leave those Congress set out to protect -- the participants in ERISA-governed plans and their beneficiaries -- with less protection than they enjoyed before ERISA was enacted." Mertens, 508 U.S. at 267 (White, J., dissenting, quoting Firestone, 489 U.S. at 114).

## II. Primary Liability.

FA argues that, even if Dakotas stated a claim under § 502(a)(3), the district court erred in ruling that FA is primarily liable for payment of Jacob's incurred medical expenses. FA lost this contention on the merits in at least one other case. See Central States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc., 848 F. Supp. 2d 805, 808-11 (W.D. Mich. 2012), aff'd, 756 F.3d at 956-959. Perhaps for that reason, its argument to this court is rather cryptic.

The parties appear to agree that the plan and FA's policy include conflicting COB provisions. "If an ERISA plan and an insurance policy contain conflicting coordination of benefits clauses, then as a matter of federal common law the terms of the ERISA plan, including its coordination of benefits clause, must be given full effect." First Agency, 756 F.3d at 957, quoting Auto Owners Ins. Co. v. Thorn Apple Valley, Inc., 31 F.3d 371, 374 (6th Cir. 1994). FA argues generally that ERISA should not apply to this dispute but does not challenge this principle as the district court applied it, so we need not address the issue.

The district court concluded that FA's coverage is primary because Section 10.6 of the Dakotas plan provides that "coverage under This Plan is secondary coverage to any plan or policy of insurance which may pay medical expenses for a

specific risk." Dakotas, 2016 WL 1736619, at *4. FA argues that Section 10.6 does not apply because FA's policy "is a multiple risk policy that covers accidents incurred during sports and conditioning activities, including travel." We agree with the district court's interpretation of Section 10.6. Accord First Agency, 848 F. Supp. 2d at 810.

### III. Attorneys' Fees.

Section 502 of ERISA gives the district court discretion to "allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 971 (8th Cir. 2002) (en banc), we overruled our prior decision creating a presumption that attorneys' fees should be awarded to prevailing ERISA plaintiffs, agreeing with "the overwhelming majority of circuits that have considered this issue." Noting the Supreme Court's admonition that Congress "legislates against the strong background of the American Rule," Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994), and that ERISA has "neutral, discretionary attorney fee language," 299 F.3d at 971, we urged district courts to apply the non-exclusive factors outlined in Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984), "and other relevant considerations as general guidelines for determining when a fee is appropriate." Id. at 972.

Here, the district court, applying the non-exclusive Westerhaus factors without citing our en banc decision in Martin, granted Dakotas a reduced award of $9,100.00 in attorneys' fees and $55.00 in non-taxable costs. Though declining to find that FA litigated in bad faith, the court concluded that a fee award was appropriate because the COB provisions in the Dakotas plan unambiguously state that FA has the primary responsibility, and FA as a party to an action in which the Sixth Circuit made the same determination was on notice that its arguments were not persuasive. See First Agency, 756 F.3d at 957-58 (6th Cir. 2014). The court reduced the award because it found the number of hours billed by Dakotas' attorneys unreasonable.

-10-

We conclude the court abused its discretion in awarding attorneys' fees. While FA's primary coverage may be rather obvious if the ERISA plan's COB provisions apply, FA's position that ERISA should not govern this dispute was not obviously wrong, and its argument that Dakotas was not entitled to declaratory relief under § 502(a)(3) was virtually untested. Compare Eisenrich v. Mpls. Retail Meat Cutters & Food Handlers Pension Plan, 574 F.3d 644, 651 (8th Cir. 2009).[7] Because we reverse the award of attorneys' fees, we need not address whether the district court abused its discretion in reducing the fee award.

The Order of the district court entered March 11, 2016 is affirmed, the Order of the district court entered July 15, 2016 is reversed, and the case is remanded for entry of an Amended Judgment consistent with this opinion.

COLLOTON, Circuit Judge, concurring in the judgment.

I agree with the court's conclusion in Part I that historical evidence establishes that "Dakotas' declaratory judgment action is an equitable claim seeking remedies typically available in equity and therefore available under § 502(a)(3)" of ERISA, 29 U.S.C. § 1132(a)(3). *Ante*, at 7. The court also cites two other apparent reasons for its holding. First, the court adverts to the "paradoxical result" that would obtain if the remedy sought here were unavailable, and opines that "[o]ne might think that the underlying purposes of ERISA and of equitable relief generally would permit a court to fashion an appropriate remedy." *Ante*, at 8 (quoting *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 159 (2d Cir. 2014)). Second, the court explains that the holding "avoids the anomaly of interpreting

_____

[7]We note that, long before ERISA was enacted, "a common way in which disputes over which insurance carrier is liable to a particular claimant are resolved is by a suit for a declaratory judgment brought by one of the carriers against the other." Winstead, 933 F.2d at 577. A district court should consider whether this is a relevant "other consideration" in applying the non-exclusive Westerhaus factors.

-11-

ERISA so as to leave those Congress set out to protect -- the participants in ERISA-governed plans and their beneficiaries -- with less protection than they enjoyed before ERISA was enacted." *Ante*, at 9 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 267 (1993) (White, J., dissenting)). As the decisions in *Mertens* and *Gerber* themselves show, however, these concerns do not permit a court to fashion a remedy that was not typically available in equity. *Mertens*, 508 U.S. at 261-62; *Gerber*, 771 F.3d at 159. Whether the relief sought was typically available in equity is dispositive under ERISA. Avoiding the "paradox" mentioned in *Gerber* and the "anomaly" cited in the *Mertens* dissent may be a salutary consequence of ruling for Dakotas, but it is not a reason for the decision.

I also agree with the conclusions reached in Parts II and III, and I concur in the judgment.

_____